UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RANDY NAM,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>FOAMIX PHARMACEUTICALS LTD., STANLEY HIRSCH, STANLEY STERN, REX BRIGHT, ANNA KAZANCHYAN, ANTHONY BRUNO, DAVID DOMZALSKI, AARON SCHWARTZ, and SHARON BARBARI,<br><br>　　　　　Defendants. | Case No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Randy Nam ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

**NATURE AND SUMMARY OF THE ACTION**

1.　Plaintiff brings this action against Foamix Pharmaceuticals Ltd. ("Foamix" or the "Company") and the members of Foamix's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9arising out of their attempt to sell the Company to Menlo Therapeutics Inc. ("Menlo") and Giants Merger Subsidiary Ltd. ("Merger Sub").

2.　On November 11, 2019, the Company announced it had entered into an Agreement and Plan of Merger (as amended, the "Merger Agreement"). Under the terms of the Merger

Agreement, each Foamix stockholder will receive 0.5924 of a share of Menlo common stock plus a contingent stock right.

3.  On December 4, 2019, Menlo filed a Schedule 14A Definitive Proxy Statement (the "Proxy") with the SEC. The Proxy is materially deficient and misleading because, *inter alia*, it fails to disclose material information regarding: (i) Company management's financial projections; and (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor Barclays Bank PLC ("Barclays"). Accordingly, without additional information the Proxy is materially misleading in violation of federal securities laws.

4.  The stockholder vote to approve the Proposed Transaction is forthcoming. Under the Merger Agreement, following a successful stockholder vote, the Proposed Transaction will be consummated. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin defendants from conducting the stockholder vote on the Proposed Transaction unless and until the material information discussed below is disclosed to the holders of the Company common stock, or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5.  This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.  This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an

individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391 because: (i) the Company maintains its principal U.S. offices in this District; (ii) one or more of the defendants either resides in or maintains executive offices in this District; and (iii) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

8.      Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Foamix.

9.      Defendant Foamix is an Israeli company, with its principal executive offices located at 2 Holzman Street, Weizmann Science Park Rehovot, Israel and its U.S. offices located at 520 U.S. Highway 22, Suite 204, Bridgewater, New Jersey 08807.  Foamix's common stock trades on the NASDAQ Global Market under the ticker symbol "FOMX."

10.     Defendant Stanley Hirsch ("Hirsch") has served as Chairman of the Board since 2016 and a director of the Company since 2005.

11.     Defendant Stanley Stern ("Stern") has served as a director of the Company since 2014.

12.     Defendant Rex Bright ("Bright") has served as a director of the Company since 2014.

13.     Defendant Anna Kazanchyan ("Kazanchyan") has served as a director of the Company since 2014.

14.     Defendant Anthony Bruno ("Bruno") has served as a director of the Company since 2018.

15. Defendant David Domzalski ("Domzalski") has served as the Company's Chief Executive Officer ("CEO") since 2017 and a director of the Company since 2018. Defendant Domzalski has been with Foamix since April 2014, and previously served as the president of its U.S. subsidiary, Foamix Pharmaceuticals Inc.

16. Defendant Aaron Schwartz ("Schwartz") has served as a director of the Company since 2014.

17. Defendant Sharon Barbari ("Barbari") has served as a director of the Company since 2019.

18. Defendants identified in paragraphs 10-17 are referred to herein as the "Board" or the "Individual Defendants."

19. Relevant non-party Menlo is a Delaware corporation, with its principal executive offices located at 200 Cardinal Way, 2nd Floor, Redwood City, California 94063. Menlo is a late-stage biopharmaceutical company focused on the development and commercialization of serlopitant for the treatment of pruritus, or itch, associated with various conditions such as prurigo nodularis ("PN"), psoriasis and chronic pruritus of unknown origin ("CPUO"). Menlo's common stock trades on the NASDAQ Global Select Market under the ticker symbol "MNLO."

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

20. Foamix is a late clinical-stage specialty pharmaceutical company focused on developing and commercializing its proprietary, innovative and differentiated topical drug candidates for dermatological therapy. Foamix's lead product candidate, FMX101 (4% minocycline foam), is being developed for the treatment of moderate-to-severe acne and Foamix's second product candidate, FMX103 (1.5% minocycline foam), is being developed for the treatment of moderate-to-severe papulopustular rosacea. Both product candidates are novel topical foam

formulations of the antibiotic minocycline and were developed using the Company's *Molecule Stabilizing Technology*, a proprietary foam platform designed to optimize the topical delivery of minocycline, an active pharmaceutical ingredient, or API, that is currently available only in oral form despite its prevalent use in dermatology.

21. On August 7, 2019, Foamix announced its second quarter 2019 financial results. Defendant Domzalski commented on the quarter, stating:

> We continue to make excellent progress advancing our late stage pipeline in dermatology and in making preparations to become a commercial organization . . . . The FDA has established October 20, 2019 as the Prescription Drug User Fee Act ("PDUFA") action date for FMX101 in acne, setting us up for potential approval of our first product later this year. Earlier this week, we submitted an NDA for our second product candidate, FMX103 for the treatment of papulopustular rosacea. We were pleased, also, to have secured up to $64 million in financing from two of our longstanding shareholders, Perceptive Advisors and OrbiMed. Combined with our current cash position, we believe these investments, along with the future access to capital which these transactions provide, will allow us to fund the commercial launches of FMX101 and FMX103, pending FDA approval of these products.

22. In the press release, the Company further provided the following corporate and regulatory update:

- Submitted a New Drug Application ("NDA") to U.S. FDA for FMX103 for the treatment of moderate-to-severe papulopustular rosacea.
  - Submission is supported by the results from two Phase 3 clinical trials, FX2016-11 and FX2016-12. In these trials, FMX103 achieved both co-primary endpoints, demonstrating statistically significant improvements in inflammatory lesion count and Investigator Global Assessment treatment scores. It also incorporates information on chemistry manufacturing and controls, and data from non-clinical toxicology studies.
- Publication of Phase 3 study FX2017-22 ("Study 22) of FMX101 in acne in the Journal of the American Academy of Dermatology.
  - Study 22 was conducted by Foamix to support the NDA submission of FMX101, which is currently under review by the FDA for the treatment of inflammatory lesions of non-nodular moderate-to-severe acne vulgaris in patients nine years of age and older.
- Two posters featuring FMX101 and the FMX101 vehicle were presented at the Annual Meeting of the Society for Investigative Dermatology, held May 8-11, 2019, in Chicago.

- Completed Clinical Investigator Training Meeting for Phase 2 study of FCD105 (3% minocycline + 0.3% adapalene foam) for the treatment of moderate-to-severe acne vulgaris.
- Secured up to $64 million in financing in transactions with Perceptive Advisors and OrbiMed.

**The Proposed Transaction**

23. On November 11, 2019, Foamix and Menlo issued a joint press release announcing the Proposed Transaction. The press release states, in relevant part:

> REHOVOT, Israel, BRIDGEWATER, N.J. and REDWOOD CITY, Calif., Nov. 11, 2019 (GLOBE NEWSWIRE) -- Foamix Pharmaceuticals Ltd. (Nasdaq: FOMX ) ("Foamix") and Menlo Therapeutics Inc. (Nasdaq: MNLO) ("Menlo") today announced that they have signed a definitive merger agreement to create a combined biopharmaceutical company focused on the commercialization and development of therapeutics to serve patients in the dermatology space. The Boards of Directors of both Foamix and Menlo have unanimously approved the transaction.
>
> The combined company will have a diversified portfolio including an approved product and three late-stage product candidates focused on dermatologic indications.
>
> Foamix recently received FDA approval for AMZEEQ™ (minocycline) topical foam, 4%, for the treatment of inflammatory lesions of non-nodular moderate-to-severe acne vulgaris in adults and pediatric patients 9 years of age and older. AMZEEQ™ is the first topical formulation of minocycline. Foamix is finalizing the implementation of the commercial infrastructure in preparation for a U.S. commercial launch anticipated in January 2020.
>
> Foamix recently submitted a New Drug Application to the U.S. Food and Drug Administration (FDA) for FMX103 (minocycline) topical foam, for the treatment of moderate-to-severe papulopustular rosacea. The FDA set a Prescription Drug User Fee Act action date of June 2nd, 2020. If approved, FMX103 would be the first minocycline product available for rosacea patients. Foamix is also conducting a Phase II trial for FCD105, a topical combination foam of minocycline and adapalene, currently being evaluated for the treatment of moderate-to-severe acne vulgaris.
>
> Menlo's lead late stage product candidate, serlopitant, is being developed as a novel treatment for pruritus (itch). Two Phase III clinical trials of serlopitant for the treatment of pruritus associated with prurigo nodularis ("PN") are fully enrolled, with results expected in March or April 2020. Serlopitant has received Breakthrough Therapy Designation by the FDA for the treatment of pruritus associated with PN and has the potential to be the first approved therapy for this indication. Serlopitant is also being evaluated for chronic pruritus of unknown

origin ("CPUO"), currently in Phase II clinical trials, and for pruritus associated with psoriasis, which had positive Phase II data.

The combined company has a compelling product portfolio and late-stage pipeline. There are multiple near-term milestones:

- Commercial launch of AMZEEQ™ anticipated in January 2020
- Phase II clinical trial results for serlopitant for the treatment of CPUO in January or February 2020
- Phase III clinical trial results in the U.S. and Europe for serlopitant for the treatment of pruritus in PN in March or April 2020
- FMX103 PDUFA action date of June 2, 2020
- Phase II clinical trial results for FCD105 for treatment of moderate to severe acne with top-line data expected in mid-2020
- NDA submission, assuming Phase III success for serlopitant for the treatment of pruritus in PN, in H2 2020

**Rationale for the Transaction**

The rationale for this transaction is to create value for the combined shareholders of Foamix and Menlo that can be more advantageous together than separately through several synergies:

- Commercial leverage: Foamix's dermatology sales and marketing organization can more effectively launch Menlo's near-term potential breakthrough product for pruritus associated with PN
- Cost savings: by utilizing Foamix's commercial organization and G&A infrastructure, the companies could save approximately $50 million per year versus the stand-alone estimated duplicate organization costs in future years
- Reduced financing need: the combined cash from the companies provides runway through H1 2021
- Creates a leading dermatology company with multiple products

**Transaction Details**

The transaction is structured as a stock-for-stock exchange, enabling the Foamix and Menlo shareholders to share in the upside advantages of combining the companies. Recognizing the near term data coming from Menlo's Phase III trials in PN, the transaction accounts for the data outcomes by providing a premium to Menlo in the event that both trials are successful, while creating a mechanism to provide more shares to Foamix shareholders to provide downside adjustment if one or both PN trials do not hit their primary endpoint.

Under the terms of the merger agreement, each share of Foamix stock will be exchanged for 0.5924 of a share of Menlo common stock and a contingent stock right ("CSR"). The exchange ratio (prior to any adjustment through the CSR)

implies a 18% premium to Menlo shareholders based upon the 10-day average volume weighted trading price for each company. Foamix shareholders will own approximately 59% of the combined company and Menlo shareholders will own approximately 41% on a pro forma, fully diluted basis, giving effect to all dilutive stock options at the time of announcement, units and warrants but without taking into account any adjustment to the exchange ratio or through the CSR. The exchange ratio or CSR may result in the delivery of additional shares of Menlo common stock to Foamix shareholders dependent upon the Phase III trial results for serlopitant for the treatment of pruritus in PN. There are certain adjustments to the ownership levels for each company's shareholders as follows that result from an adjustment to the exchange ratio under the Merger Agreement prior to closing or post-closing through the issuance of CSRs to Foamix shareholders:

- If one of the Phase III PN trials fails to meet its primary endpoint at or before May 31, 2020, Foamix shareholders will receive an additional 0.6815 of a share of Menlo common stock for each Foamix share, increasing pro forma ownership of the combined company by Foamix shareholders to 76%
- If both Phase III PN trials fail to meet their primary endpoints at or before May 31, 2020, Foamix shareholders will receive 1.2082 additional Menlo shares for each Foamix share, increasing pro forma ownership of the combined company by Foamix shareholders to 82%
- If both the Phase III PN trials are successful with results announced by May 31, 2020, then no additional Menlo shares will be issued to Foamix shareholders and pro forma ownership by Foamix shareholders will remain 59%
- In the event that the results of the Phase III PN trials are received prior to closing (or if the results of neither trial has been announced by May 31, 2020 and the closing occurs thereafter), then the exchange ratio will be amended based on the clinical trial results and no CSRs will be issued.

The adjustments to ownership levels were designed with the intent of providing protection to Foamix shareholders in the event that either of these important serlopitant clinical trials were not successful. To the extent the CSRs are issued, they will not be registered or separately tradeable, and there will be restrictions on their transfer.

The combined company will be led by David Domzalski, CEO of Foamix and headquartered in New Jersey. The board of the combined company will consist of five members designated by Foamix (including Mr. Domzalski) and two members designated by Menlo (including Steve Basta, its CEO).

The transaction is subject to approval of the merger by Foamix shareholders, approval of the share issuance to Foamix shareholders by Menlo stockholders, as well as regulatory approvals and satisfaction of other customary closing conditions. Certain significant shareholders of Foamix and Menlo, together with the CEOs of both companies, have entered into agreements, whereby they have agreed to vote

the shares they hold at the time of the shareholder meeting in favor of the merger and/or share issuance (subject to limited exceptions). The transaction is expected to be completed in late Q1/early Q2 of 2020.

**Combination Creates a Differentiated Dermatology-Focused Company**

The combination of the two companies is expected to capitalize on the collective skills sets, internal expertise and combined assets to create a comprehensive and more scaled biopharmaceutical company focused on dermatology. Foamix's mission is to improve the lives of patients by developing and commercializing proprietary, innovative and differentiated drugs in dermatology, and plans to leverage its infrastructure to efficiently commercialize a portfolio of products while continuing to develop new therapies.

Foamix is currently developing the commercial infrastructure to support the upcoming U.S. commercial launch of AMZEEQ™ anticipated in January 2020. The initial launch intends to focus on 6,000 high-prescribing dermatologists. The commercialization plans for FMX103 and serlopitant for pruritus associated with PN, if approved, will utilize the established sales force and commercial infrastructure for AMZEEQ™ requiring minimal additional investment.

David Domzalski, Foamix Chief Executive Officer, said: "The combination of Menlo with Foamix accelerates our progression in becoming a leading dermatology-focused company with several late-stage assets that can leverage the commercialization infrastructure we are building to support the launch of AMZEEQ™. Serlopitant for pruritus associated with PN represents a breakthrough therapy for a dermatologic condition with no currently approved treatment options. Further, Foamix's drug development platform will continue to bring novel dermatology product candidates into the clinic, including FCD105, which recently began enrollment in its Phase II trial. The combined company will look to continue developing products that will leverage the existing infrastructure. We are excited about the momentum our company has now, and want to thank our employees and partners for their hard work and deep commitment as we enter this next phase."

Steve Basta, Menlo Chief Executive Officer, said: "Our goal with this merger is to maximize value by developing and commercializing our assets in the context of a broader dermatology franchise. A combination with Foamix will help de-risk and accelerate serlopitant's commercial launch, assuming approval. The Foamix management team also brings extensive R&D and commercial expertise, having developed two novel topical therapies for acne and rosacea at Foamix, and also in leading the successful commercial launches of several dermatology products prior to Foamix. We are excited about what these two companies can accomplish together."

The combined company is expected to have sufficient cash to support its operational plans through the first half of 2021.

**The Proxy Misleads Foamix Stockholders by Omitting Material Information**

24. On January 7, 2020, the Company filed the materially misleading and incomplete Proxy with the SEC. Designed to convince the Company's stockholders to vote in favor of the Proposed Transaction, the Proxy is rendered misleading by the omission of critical information concerning the Company's financial projections and the financial analyses of Barclays.

*Material Omissions Concerning Foamix's Financial Projections*

25. The Proxy omits material information regarding the Company's financial projections provided by Foamix's management.

26. For example, the Proxy sets forth:

> In May 2019, following a recent market and demand research study commissioned by and evaluated by Foamix management for its lead product candidate, AMZEEQTM (formerly FMX101), Foamix management prepared a forecast, which included the Company's anticipated U.S. revenue forecasts for sales of AMZEEQTM and FMX103, and anticipated operating expenses related to such product candidates and certain of its other pipeline projects which was presented to the Foamix Board at its regularly-scheduled Board meeting in May ("Foamix May Forecast").

> Beginning in late August 2019, Foamix management updated the Foamix May Forecast for its business for the purpose of considering and evaluating the potential merger with Menlo, taking into account recent developments in its supply chain, reimbursement and other commercialization efforts. This "Foamix August Forecast" reflected the results of the previous market research and demand study for AMZEEQTM, a recently completed market research and demand study for FMX103 and the Foamix May Forecast, and included Foamix's revenue forecasts for its potential U.S. sales of AMZEEQTM and FMX103, updated to reflect recent developments in its commercialization efforts and anticipated operating expenses related to its pipeline projects, that had progressed since May (from which Foamix does not expect to earn revenue until after 2024). In providing the Foamix August Forecast to Barclays, Foamix ascribed a probability of technical and regulatory success adjustment of 90% for FMX103 ("Foamix August Probability-Adjusted Forecast"). Both of the internally prepared Foamix August Forecast and the Foamix August Probability-Adjusted Forecast (the latter of which is presented below) were based on information available to Foamix management and estimates, assumptions and judgments made by Foamix management at the respective times of their preparation and spoke only as of such times.

Proxy at 121. The Proxy, however, fails to disclose: (i) management's financial projections prepared in May 2019 (the "May Forecast"); and (ii) management's updated May Forecast prepared in late August 2019 (the "August Forecast"), which form the basis of Foamix management's probability of success adjusted projections, provided to and relied upon by Barclays in rendering its fairness opinion.

27. Moreover, in connection with its fairness opinion, Barclays:

- reviewed and analyzed the pro forma impact of the Merger on the future financial performance of the Combined Company, including cost savings, operating synergies and other strategic benefits expected by the management of Foamix to result from a combination of the businesses (the "Synergies");

- reviewed and analyzed estimates and projections of Menlo's tax position furnished to us by Foamix, including estimates and projections of net operating losses prepared by management of Foamix;

*Id.* at 114. The Proxy fails, however, to disclose: (i) the pro forma impact of the Proposed Transaction on the future financial performance of the combined company; (ii) the cost savings, operating synergies and other strategic benefits expected by the management of Foamix to result from a combination of the businesses; and (iii) estimates and projections of Menlo's tax position provided to Barclays by Foamix, including estimates and projections of net operating losses prepared by Foamix management.

28. Omission of the above-referenced projections renders the financial projections included in the Proxy materially incomplete and misleading. If a proxy statement discloses financial projections and valuation information, such projections must be complete and accurate.

***Material Omissions Concerning Barclays' Financial Analyses***

29. The Proxy describes Barclays' fairness opinion and the various valuation analyses performed in support of its opinion. However, the description of Barclays' fairness opinion and

analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Foamix's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Barclays' fairness opinion in determining whether to vote in favor of the Proposed Transaction.

30.     With respect to Barclays' *Discounted Cash Flow Analysis – Foamix*, the Proxy fails to disclose: (i) the metric to which Barclays applied growth rates of 1.0% to 3.0% in deriving the terminal value for the Company after December 31, 2024 and quantification thereof; (ii) the implied terminal value of the Company; (iii) the net operating losses of Foamix; (iv) quantification of the inputs and assumptions underlying the discount rate range of 12.0% to 14.0%; and (v) the implied terminal multiples resulting from the analysis.

31.     With respect to Barclays' *Discounted Cash Flow Analysis – Menlo – Phase III PN Trials "Full Success,"* the Proxy fails to disclose: (i) the metric to which Barclays applied growth rates of -10.0% to 10.0% in deriving the terminal value for Menlo after December 31, 2035 and quantification thereof; (ii) the implied terminal value of Menlo; (iii) the net operating losses of Menlo; (iv) quantification of the inputs and assumptions underlying the discount rate range of 12.0% to 14.0%; and (v) the implied terminal multiples resulting from the analysis.

32.     With respect to Barclays' *Discounted Cash Flow Analysis – Menlo – Phase III PN Trials "Partial Success,"* the Proxy fails to disclose: (i) the metric to which Barclays applied growth rates of -10.0% to 10.0% in deriving the terminal value for Menlo after December 31, 2035 and quantification thereof; (ii) the implied terminal value of Menlo; (iii) the net operating losses of Menlo; (iv) quantification of the inputs and assumptions underlying the discount rate range of 12.0% to 14.0%; and (v) the implied terminal multiples resulting from the analysis.

33.     The omission of this information renders certain portions of the Proxy materially

misleading, including, inter alia, the following sections of the Proxy: "Summary of Certain Foamix Unaudited Prospective Financial Information" and "Opinion of Barclays as Foamix's Financial Advisor."

34. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

35. Plaintiff repeats all previous allegations as if set forth in full.

36. During the relevant period, defendants disseminated the false and misleading Proxy specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

37. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy. The Proxy was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about the Company's financial projections and the financial analyses performed by the Company's financial advisor. The defendants were at least negligent in causing the Proxy to be filed with these materially false and misleading statements.

38. The omissions and false and misleading statements in the Proxy are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

39. By reason of the foregoing, the defendants have violated Section 14(a) of the

Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

2. Because of the false and misleading statements in the Proxy, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

40. Plaintiff repeats all previous allegations as if set forth in full.

41. The Individual Defendants acted as controlling persons of Foamix within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Foamix, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

42. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

43. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They

were, thus, directly involved in the making of the Proxy.

44. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

45. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

46. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Foamix's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Foamix, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to disseminate a Proxy that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

E. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  January 21, 2020

**WEISSLAW LLP**

By  /s/ Mark. D. Smilow
Mark. D. Smilow
1500 Broadway, 16th Floor
New York, New York 10036
Tel: (212) 682-3025
Fax: (212) 682-3010
Email: msmilow@weisslawllp.com

*Attorneys for Plaintiff*

**OF COUNSEL:**

**BRAGAR EAGEL & SQUIRE, P.C.**
Alexandra B. Raymond
885 Third Avenue, Suite 3040
New York, New York 10022
Tel: (646) 860-9158
Fax: (212) 214-0506
Email: raymond@bespc.com

*Attorneys for Plaintiff*